IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TROY L. ASH, Jr., #200039, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-cv-00200-JPG |
| ) | |
| MARILYN REYNOLDS, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court for a decision is a Motion for Summary Judgment on Exhaustion of Administrative Remedies filed by Defendant Marilyn Reynolds (Nurse Reynolds). (Doc. 42). As explained in more detail below, Plaintiff Troy Ash, Jr., failed to exhaust his administrative remedies before bringing suit. Therefore, the motion shall be **GRANTED**.

### BACKGROUND

Plaintiff Troy Ash, Jr., a former detainee at Williamson County Jail (Jail), filed this civil rights action under 42 U.S.C. § 1983 against Nurse Marilyn Reynolds on February 22, 2021. In his First Amended Complaint, Ash alleges that he was diagnosed with COVID-19 two days after Nurse Reynolds administered a COVID-19 test to every inmate on his block without wearing a mask, gloves, or other personal protective equipment (PPE) on December 4, 2020. (Doc. 36). When he complained, Nurse Reynolds told Ash to "shut up" and proceeded to administer his test without PPE. Nurse Reynolds and Ash both tested positive for COVID-19 on December 6, 2020. Although Nurse Reynolds worked from December 6-11, 2020, the nurse denied Ash access to medical care, showers, cleaning supplies, and education about the virus. (*Id*.).

1

Following screening of this matter under 28 U.S.C. § 1915A, the Court allowed Ash to proceed with Counts 1 and 3, as follows:

**Count 1:** Fourteenth Amendment claim against Nurse Reynolds for taking the following objectively unreasonable actions with respect to Ash:

(a) refusing to use PPE while administering inmates COVID-19 tests on December 4, 2020;

(b) refusing to provide Ash with medical treatment, sanitizer, and showers during his illness with COVID-19 while she was still at work from December 6-11, 2020.

**Count 3:** Medical malpractice claim against Nurse Reynolds for negligently:

(a) refusing to use PPE while administering inmates COVID-19 tests on December 4, 2020;

(b) refusing to provide Ash with medical treatment, sanitizer, and showers during his illness with COVID-19 and while she was still at work from December 6-11, 2020;

(c) failing to ensure Ash received ongoing treatment and access to sanitizer and showers while she was out with COVID-19 in December 2020;

(d) refusing to test Ash again for COVID-19 in late December 2020 before transferring him onto a block with healthy detainees.

(Doc. 39).

## MOTION FOR SUMMARY JUDGMENT

Nurse Reynolds now seeks summary judgment based on Ash's failure to exhaust his available administrative remedies at the Jail before bringing suit. (Docs. 42, 43). According to her motion, Ash submitted a single late grievance to complain about some, but not all, issues involved in this suit on December 21, 2020. (Docs. 42, 43; Doc. 43-1, ¶ 4). He complained about the nurse's failure to wear a mask seventeen days after the incident occurred, which is well beyond the 24-hour deadline for filing a grievance about an incident at the Jail. (Doc. 43-1, ¶ 4). In the grievance, Ash did not mention Nurse Reynolds' denial of medical treatment, cleaning supplies,

sanitizer, and showers on December 6-11, 2020. He also abandoned the grievance process after the first step of the four-step process. Because Ash previously used the same process to properly exhaust his grievance on an unrelated issue, he knew how to use Williamson County Jail's Grievance Procedure and simply failed to do so here. (*Id*. at ¶¶ 3, 6). For each of these reasons, Nurse Reynolds seeks summary judgment on Count 1 and asks the Court to decline supplemental jurisdiction over Count 3. (Docs. 42, 43).

**RESPONSE**

Ash opposes summary judgment. (Doc. 50). He admits knowing and using all four steps of the Jail's grievance procedure to properly exhaust a prior grievance on an unrelated matter. However, Ash maintains that the only reason he did not complete the grievance process here was because C/O Baker did not turn in his grievance for Step 2. Although Ash handed him the form and discussed it with him to ensure it was processed properly, Baker never turned it in. Ash inquired about the status of the second-step grievance "[a]fter a few days had passed," but he was told that "no one knew of it." (*Id*.). When Ash asked C/O Baker about it, the officer just walked past him without responding. Nurse Reynolds, C/O Baker, and Summer North were all aware that Ash filed the Step 2 grievance, but they covered it up. North also told Ash that he could not proceed any further with the grievance because the time for doing so had expired. Ash maintains that he could have properly exhausted his administrative remedies, if the Jail made use of a locked grievance drop box. (*Id*.).

**ANALYSIS**

**A.      Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the

3

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Generally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *See, e.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes. . . ."). But, the opposite is true when the motion pertains to a prisoner's failure to exhaust. The Seventh Circuit has instructed courts to conduct an evidentiary hearing to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts*, 745 F.3d at 234. Where there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). No hearing is necessary here.

B.     **Prison Litigation Reform Act**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions until he exhausts available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 663 F.3d 899, 903 (7th Cir. 2011). Proper exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford*, 548 U.S. at 90. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust his . . . remedies." *Pozo*, 286

F.3d at 1024. "The exhaustion requirement is an affirmative defense which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d at 903.

C.     **Williamson County Jail's Grievance Procedure**

Williamson County Jail used the following grievance process during Ash's detention, and it is described in the Williamson County Jail Inmate Handbook, as follows:

> **18.     Inmate Grievance Procedure**
>
> You must first try to resolve problems with the Housing Officer or inmates before filing an Inmate Grievance Form. If you must file a Grievance, file the Inmate Grievance Form with the Housing Officer to address problems or conflicts.
>
> Inmates are allowed to file a grievance when: subjected to a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges, without just cause, as specified in this handbook while in custody of the Williamson County Jail.
>
> Grievance steps are as follows:
>
> Step 1:   On the Grievance Form, write a request to the Housing Officer and explain what your grievance is. If your grievance is not resolved, go to Step 2;
>
> Step 2:   Write a grievance form request to the Shift Sergeant/Supervisor stating your grievance. Include the name of the officer who already answered the grievance. If the grievance is not resolved, go to Step 3;
>
> Step 3:   Write a grievance form request to the Jail Administrator by following the same procedure you did with the Shift Sergeant/Supervisor. If the grievance is not resolved, go to Step 4;
>
> Step 4:   Write a request form to the Sheriff by following the same procedure as you did with the Jail Administrator. The Sheriff's decision will be final.
>
> Inmates have 24 hours from the time of an incident to file a grievance and 24 hours from each time a grievance is denied to file the next step.
>
> NOTE:  Inmates, who file a grievance which proves to be false, upon conclusion of the investigation, shall be subject to Disciplinary Action.

(Doc. 43-1, p. 10).

**D.     Discussion**

The undisputed facts show that Ash failed to exhaust his administrative remedies before bringing this lawsuit. The Jail's grievance procedure clearly provides a 24-hour deadline for filing a grievance or appeal. It states: "Inmates have 24 hours from the time of an incident to file a grievance and 24 hours from each time a grievance is denied to file the next step." (Doc. 43-1, p. 10). It is undisputed that Ash filed his "Step 1" grievance on December 21, 2020. (Doc. 36, p. 10; Doc. 43-1, ¶ 4). In the grievance, Ash focused only on the nurse's refusal to wear a mask when administering his COVID-19 test on December 4, 2020; he did not mention her denial of medical treatment, cleaning supplies, sanitizer, and showers following his diagnosis with COVID-19 on December 6-11, 2020. (*Id.*). The Court finds that Ash filed the Step 1 grievance more than two weeks late.

Ash admittedly knew and used the Jail's grievance process to exhaust his administrative remedies for one or more prior incidents, so he was aware of the steps to this grievances process and the timeline to follow. (*See* Doc. 50, p. 1). He states, "I am fully aware an inmate must complete [a] grievance form and timely submit it through a four step process. . . . On previous incidents when I filed a grievance I followed the 4 steps protocol, because I am aware of the process I must take." By his own admission, Ash knew he need to use the four-step grievance process— and take each step in a timely manner—before his issue was exhausted.

Even so, Ash offers no excuse for failing to file a Step 1 grievance until seventeen days *after* the incident giving rise to this action. He makes no argument that administrative remedies were unavailable to him between the dates the nurse failed to wear a mask on December 4, Ash and Nurse Reynolds tested positive for COVID-19 on December 6, and Ash filed a Step 1 grievance on December 21, 2020. Ash does not argue that anyone thwarted his efforts to initiate

6

the grievance process.  He does not assert that his failure to file a timely Step 1 grievance was innocent.

He focuses instead on interference with his Step 2 grievance.  In doing so, he misses the point, *i.e.*, the Step 1 grievance was late due to his own delay.  Ash simply failed to initiate the grievance process in a timely manner.  The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement.  *Doe v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  Proper exhaustion requires an inmate to file complaints and appeals in the place, at the time, and in the manner required by the prison's administrative rules.  *Pozo*, 286 F.3d at 1025.  Failure to properly exhaust all available administrative remedies provides grounds for dismissal of the lawsuit.  *Pavey*, 544 F.3d at 741.  Ash's failure to initiate the grievance process within 24 hours of the incident(s) giving rise to his claims is dispositive here.  The Court finds that he has failed to comply with the PLRA's exhaustion requirement.

Defendants are entitled to summary judgment on the federal constitutional claim in Count 1 based on Ash's failure to exhaust his available administrative remedies before bringing suit.  Given the Court's dismissal of the only federal claim in Count 1, the Court relinquishes supplemental jurisdiction over the remaining state law claim in Count 3.  *See* 28 U.S.C. § 1367(c)(3); *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

**DISPOSITION**

**IT IS ORDERED** that Defendant Marilyn Reynolds' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 42) is **GRANTED**.  **COUNT 1** is **DISMISSED** without prejudice because Plaintiff Troy Ash, Jr., failed to exhaust his available administrative remedies before bringing this suit, and **COUNT 3** is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Because no other claims remain pending, this action is **DISMISSED.**  If Ash wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. 4(a)(1)(A).  If Ash does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467.  He must list each of the issues he intends to appeal in the notice of appeal.  If the appeal is found to be nonmeritorious, Ash may also incur a "strike."  A proper and timely motion seeking reconsideration of this Order and filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:  8/1/2023**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**